IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| **HOWARD J. MULLINS**, | ) | Case No. 16-11032 (BLS) |
| **ROBIN L. MULLINS** | ) | |
| | ) | |
| Debtors, | ) | |
| -------------------------------------------------------- | ) | |
| | ) | |
| **JEROME LEE BOUNDS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 16-51034 |
| v. | ) | |
| | ) | |
| **HOWARD J. MULLINS** | ) | Docket Ref. # 11, 12, 13 |
| **ROBIN L. MULLINS** | ) | |
| | ) | |
| Defendants. | ) | |
| -------------------------------------------------------- | ) | |

**OPINION**

Before the Court is a motion for summary judgment filed by Plaintiff Jerome Bounds ("Mr. Bounds" or "Plaintiff"). Plaintiff seeks an order determining that the debt owed to him by the Debtors Howard J. Mullins and Robin L. Mullins (the "Debtors") is non-dischargeable under 11 U.S.C. 523(a)(6). The Defendants assert that there is a genuine dispute of material fact as to whether Mr. Bounds' claims arise from "willful and malicious" conduct by the Debtors. For the reasons set forth below, the Plaintiff's Motion will be GRANTED.

1

**JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157(a), (b)(1), and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A), (B), (J) and (O).

**BACKGROUND**

The Debtors filed a Chapter 7 Bankruptcy petition on April 25, 2016. Mr. Bounds filed a Complaint Objecting to Dischargeability of Indebtedness (the "Complaint") alleging that the underlying cause of the Settlement Agreement that gave rise to the debt resulted from a "willful and malicious injury" committed by Mr. Mullins against him.

Many of the operative material facts leading to the Settlement Agreement are not in dispute. Mr. Bounds was a part-time employee for Gene's Limousine Service, a company operated by one of the Debtors, Howard Mullins. Mr. Bounds worked for the company from 2003 until 2014, at which time he was terminated. In this eleven-year period, Plaintiff worked a total of forty-five days.

On March 7, 2014, Mr. Mullins contacted the Plaintiff to offer him a five-day bus trip driving the Wesley College lacrosse team to Virginia, starting on March 10. Plaintiff initially accepted this assignment and confirmed his acceptance on March 8, 2014. However, on March 9, 2014, Mr. Bounds contacted Mr. Mullins by telephone and informed him that he was now going to decline

the assignment, as he had found a job in West Virginia that would pay him more money in cash.

After this conversation, Mr. and Mrs. Mullins returned to Gene's Limousine office at the same time Mr. Bounds was returning with the company bus. Defendant Mr. Mullins entered the bus Mr. Bounds was driving in an attempt to convince Plaintiff to keep the now-rejected assignment. The Plaintiff demanded to be paid in cash, and then the parties became engaged in what was labeled a "heated verbal exchange," which included Mr. Mullins coming on board the bus, throwing his body against Mr. Bounds, and shouting profanities. Mr. Mullins then fired Mr. Bounds and told him to leave the property.

Minutes later, after the Debtors got into their car to exit the property, they pulled up next to Mr. Bounds and asked him for some outstanding paperwork related to a completed job. He provided this paperwork, and then drove to the exit of the parking lot, blocking the Debtors' exit. The Debtors were unable to exit the lot, even after asking him to move and beeping their horn. After an extended period of time, Mrs. Mullins exited the vehicle and confronted Plaintiff, instructing him to stop blocking the exit. During this exchange, Mr. Bounds taunted Mrs. Mullins, apparently stating that Gene's Limousine Service was going bankrupt. This statement led to "a moment of extreme frustration and fear for her own safety" for Mrs. Mullins, who then cursed and used a racial epithet at Mr. Bounds.

Mr. Bounds had secretly taped these conversations between the parties and posted the conversations to various social media sites. The posts apparently contained edited versions of the incidents, and Mr. Bounds showed this footage to customers, presumably in an effort to have them cease doing business with Gene's Limousine.

Mr. Mullins was arrested for assaulting Mr. Bounds on the bus. The record reflects, and the Debtors acknowledge, that Mr. Mullins was convicted of assault in Maryland state court.

On April 28, 2015, Mr. Bounds filed suit in the U.S. District Court for the District of Maryland alleging counts of Racial Discrimination/Harassment under Title VII, Racial Discrimination/Harassment under § 1981 against the Defendants, and Battery against Howard J. Mullins. Debtors subsequently filed counterclaims against Plaintiff, alleging violations of the Maryland Electronic Surveillance Act, Tortious Interference with Contractual Relationship, False Imprisonment of Mrs. Mullins, False Imprisonment of Mr. Mullins, Defamation of Mrs. Mullins in Print and Video, Defamation of Mr. Mullins in Print and Video, and Defamation of Gene's Limousine.

On September 16, 2015, the suit and counterclaim were dismissed by the District Court after the parties had reached a Settlement Agreement, in which Debtors agreed to pay the Plaintiff $20,000 to settle all claims between parties. The Debtors defaulted on this agreement, and Mr. Bounds obtained a judgment

against them in Maryland's Caroline County Court, after which time they filed for Chapter 7 bankruptcy and sought to discharge the debt.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in favor of that party, there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Any doubt must be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The movant bears the initial burden of establishing that no genuine dispute of material fact exists. *See, e.g., In re Tweeter Opco, LLC*, 453 B.R. 534, 539 (Bankr. D. Del. 2011). Once the moving party carries its burden, the opposing party must go beyond the pleadings and identify specific facts showing more than "[t]he mere existence of a scintilla of evidence" that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 252; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts").

At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine dispute for trial. *Celotex*, 477 U.S. at 317. If there is a genuine dispute of

material fact, the Court cannot grant summary judgment. *In re CVEO Corp.*, 327 B.R. 210, 214 (Bankr. D. Del. 2005). Further, substantive law determines which facts are material. *Anderson*, 477 U.S. at 248. Only facts that "might affect the outcome of the suit under governing law" are considered material and will preclude summary judgment. *Id.* A dispute regarding a material fact is genuine "when reasonable minds could disagree on the result." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587

### B. "Willful and Malicious" Standard

There is no dispute that the Settlement Agreement was originally meant to end the proceedings in the District Court and settle any outstanding claims. Additionally, both parties agree that *Archer v. Warner* governs any questions about the dischargeability of the debt. 538 U.S. 314 (2003). In *Archer*, the Supreme Court noted that a Plaintiff is permitted to look beyond the terms of a settlement agreement to establish facts that led to the debt owed by the Defendants. *Archer* at 323. While in *Archer* the case led to an inquiry about whether money was obtained by fraud, false representation, or false pretenses, in the case at hand, the Complaint argues that the Settlement Agreement was intended to settle Mr. Bounds' battery claim and his claim of racial discrimination. In his assertion, he describes how his injury leading to those claims stemmed from a "willful and malicious" act by the Defendants and therefore should be non-dischargeable in bankruptcy.

The Defendants' Answer correctly supports making an *Archer* inquiry into the source of the debt, and case law further supports the idea that in ascertaining the dischargeability of a debt the Court is free to look to the underlying acts that the debt is based upon. Section 523(a)(6) excepts the discharge of a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity" and requires the injury be both willful <u>and</u> malicious. In *Kawaauhau v. Geiger*, the Court narrowly construed the phrase to apply to intentional torts, establishing that an injury must be deliberate or intentional in order to be non-dischargeable.  523 U.S. 57, 61 (1998). The debtor needed to have intended the "consequences of the act" rather than simply the act itself. *Geiger* at 61-62. Therefore, if an injury results from merely a tortious act, then it is not sufficient to meet the willful prong required under § 523(a)(6).

Governing case law in the Third Circuit has held that actions are willful and malicious if "they have either the purpose of producing injury or have a substantial certainty of producing injury." *In re Granfoff*, 250 Fed.App'x. 494, 495-296 (3d Cir.2007); *In re Glenn*, 479 B.R. 731, 736 (Bankr. M.D. Pa. 2012); *In re Conte*, 33 F.3d 303, 308-308 (3d Cir.1994).  The Court must look at the facts under the standard of proof for the dischargeability exception in § 523(a), including that for willful and malicious injury claims, which is the preponderance-of-the-evidence standard. *Grogran v. Garner*, 498 U.S. 279, 291 (1991).

This Court must determine whether the debtors' actions are willful and malicious by examining the Debtors' state of mind. Many courts have typically

7

employed a subjective approach to determine such intent. *In re Webb* 525 B.R. 226, 233 (Bankr. M.D. Pa. 2015). As stated earlier, the concepts of "willful" and "malicious" are seen as separate and distinct legal concepts. *In re Kates*, 485 B.R. 86, 100 (Bankr. E.D. Pa. 2012). Actions are "willful" if they are intended to injure another party or have a substantial certainty of producing injury, they cannot stem from injuries that are recklessly or negligently inflicted. *Geiger* 523 U.S. 57, 64 (1998).

The Ninth Circuit's *In re Sicroff*, 401 F.3d 1101, 1106 (9th Cir.2005) (citing *In re Jercich* 238 F3d 1202, 1207-1209 (9th Cir.2001)) sets out the test for a tortious act to rise to the level of maliciousness – it must be (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Though the Defendants note this standard in their Response, they claim that the Plaintiff is unable to prove all four prongs of this analysis. They, however, do not identify which one of these points the Plaintiff's Complaint is lacking. Instead, the Response makes the bare assertion that the behavior of the Defendants "ha[s] not satisfied all four prongs of the test" and does not elaborate further as to how or why. [1] *See* Response at 6 [D.I. No. 12].

---

[1] The Equal Employment Opportunity Commission's "right to sue" letter provides little guidance to the Court regarding the allegations, although both parties dispute the letter's contents. Defendants claim that the letter shows that "the EEOC did not find any racial discrimination" while the Plaintiff asserts that summary judgment is proper because the right-to-sue letter was "based on a charge of racial discrimination." However, the letter is merely a procedural instrument that was necessary for the Plaintiff to initially file his Title VII charge in the Maryland district court. To bring that claim, a charge of race discrimination must first be filed with the EEOC within 180 days of the occurrence of the unlawful practice. 42 U.S.C. 2000e-5(e)(1). Then, the EEOC is required to investigate the charge and, if unable to resolve the charge within 180 days, it must notify the complainant that it sees no reason to take administrative action. *Waiters v.*

In this analysis, one operative fact is not in dispute: the conduct of Mr. Mullins during the parties' "heated exchange." As described in Plaintiff's Complaint, Mr. Mullins threw his body against the Plaintiff, brandished his fist, and shouted profanities. Crucially, it was this conduct that led to Mr. Mullins's criminal conviction for assault and later provided the grounds for the Plaintiff's now-settled battery charge in federal district court. The Defendants' Answer, as detailed as it is in describing the facts of the case, does not assert any statements that would put these facts into dispute, and the Debtors do not dispute that Mr. Mullins was convicted based on these facts.

Therefore, in applying an *Archer* approach to the settlement debt, it is clear that the Plaintiff's civil battery claim was born out of "willful and malicious" actions, especially since this claim had the full preclusive force of a criminal conviction behind it. Third Circuit law mandates that those liabilities arising from assault or assault and battery are generally considered as founded upon a willful and malicious injury and are, therefore, within the exception to a discharge. *In re Granfoff*, 250 Fed.App'x. 494, 495-296 (3d Cir.2007). Other bankruptcy courts in our circuit have recognized that state court assault and battery charges may be determinative in such an analysis, as the state law

---

*Parsons*, 729 F.2d 233, 237 (3d Cir. 1984).  The contents of the right-to-sue letter neither support nor deny either parties' claims. Instead, this Court recognizes that the receipt of this letter merely "indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII. " *Burgh v. Coorough Council of Borough of Montrose,* 251 F.3d 465 (2001). The Court does not view the letter as a substantive judgment on the actions of either party or the merits of the claim.

9

elements for assault and battery "satisfy the willful and malicious standard for non-dischargeability."" *In re Mauz*, 496 B.R. 777, 782 (Bankr. M.D. Pa 2013); *In re Lucotch* 342 B.R. 496 (Bankr. W.D. Pa. 2006) (if the creditor obtained a judgment in state court for assault and battery, the claim would necessarily be non-dischargeable under § 523(a)(6)).

Therefore, at this stage of the proceeding, it is determined that the Settlement Agreement debt was born out of the Defendants' willful and malicious actions. In order to grant summary judgment the Court needed only find that the settlement debt stemmed from Mr. Bounds' battery claim. The battery conviction alone is enough to fulfill the requisite "willful and malicious" prong, and is dispositive on the issue of dischargeability. This Court therefore finds that the $20,000 settlement debt is non-dischargeable under § 523(a)(6).

For the above reasons, the Motion is GRANTED.

Dated: Wilmington, Delaware  
    August 24, 2017  
                                        Brendan Linehan Shannon  
                                        Chief United States Bankruptcy Judge